**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| JACQUELINE L. SCOTT, JEFFERY A. SCOTT, and JENNIFER A. SCOTT,<br><br>Plaintiffs,<br><br>v.<br><br>THE PUBLIC SCHOOL RETIREMENT SYSTEM OF MISSOURI, TINA ZUBECK, WAYNE WHEELER, DONALD CUPPS, YVONNE HEATH, AARON ZALIS, M. STEVE YOAKUM, RONDA PETERSON, SCOTT HUNT, and DEBORAH K. SCOTT<br><br>Defendants. | Case No. 09-4241-CV-C-NKL |

**ORDER**

Plaintiffs bring this action under 42 U.S.C. § 1983, seeking money damages based on the refusal to pay certain death benefits. Among the named Defendants are The Public School Retirement System of Missouri ("PSRS"), Tina Zubeck, Wayne Wheeler, Donald Cupps, Yvonne Heath, Scott Hunt, Aaron Zalis, M. Steve Yoakum, and Ronda Peterson (collectively, the "PSRS Defendants"). Before the Court is the motion of the PSRS Defendants to dismiss the Second Amended Complaint ("Complaint") under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and, alternatively, under Rule 12(b)(6) for failure to state a claim. [Doc. # 47.] For the following reasons, the Court grants the motion in part and denies it in part.

**I.      Factual Background**

The following facts are drawn from Plaintiffs' Second Amended Complaint and are assumed true for purposes of this motion to dismiss. Plaintiff Jacqueline L. Scott was married to James Scott for thirty-four years, beginning in 1971. Their children are Plaintiffs Jeffery A. Scott and Jennifer A. Scott, both adults.

Defendant PSRS is a public school teachers retirement system created by Missouri law. PSRS is separately incorporated, and Missouri law provides that it shall sue and be sued, transact all business, invest all funds, and hold all cash, securities, and property in its own name. Mo. Rev. Stat. § 169.020. All funds to operate PSRS come from personal contributions of member teachers and from the local school districts employing them. Mo. Rev. Stat. § 169.030.1. The Missouri General Assembly is precluded from making appropriations to PSRS or from financing the plan or paying retirement benefits, except indirectly through funds local districts may receive in general apportionment of school moneys. Mo. Rev. Stat. § 169.110. All funds arising from the operation of PSRS are deemed to belong to PSRS and shall not be commingled with state funds. Mo. Rev. Stat. § 169.040. The majority of PSRS's seven-member Board is elected by its members. Mo. Rev. Stat. § 169.020.2. The remaining three Board members are appointed by the governor and must be residents of school districts included in the system; one appointee must also be a retired public school employee. Mo. Rev. Stat. § 169.020.4. Since 1986, no state employee has been able to become a member of PSRS. Plaintiffs have submitted an affidavit from a representative of the Missouri Department of Education indicating that there are currently thirty-five active state employees who are members of PSRS.

Defendants Tina Zubeck, Wayne Wheeler, Donald Cupps, Yvonne Heath, Aaron Zalis, and M. Steve Yoakum are members or officers of the PSRS Board and are being sued in their official and individual capacities. Defendant Ronda Peterson, also sued in her official and individual capacity, is the Director of Member Services within the PSRS and is responsible for supervising the entire staff. Plaintiffs allege that PSRS and the individual Defendants named above acted under the color and pretense of the statutes and legal authority of the State of Missouri.

Defendant Deborah K. Scott (a.k.a. Deborah O'Keefe), was James's second wife. Jacqueline and James were both teachers, and each had retirement accounts with PSRS. During their marriage, each spouse was the named beneficiary of the other's PSRS account, with their children Jennifer and Jeffrey as contingent beneficiaries.

Plaintiffs allege that, when he became a member of PSRS in 1987, a contract formed between James and PSRS including the terms of Chapter 169 of the Missouri Revised Statutes as they existed at that time. Those terms included the right to have his death benefits paid to the beneficiary he designated. *See* Mo. Rev. Stat. § 169.070.4-5 (1986).

After their children graduated from college, graduate, and vocational school, in 2004, Jacqueline and James separated. While they were still married, in late 2004, after a series of discussions, Jacqueline and James agreed that they would leave each other as the survivorship beneficiary of their retirement accounts and that the survivor would make sure that any such money received would go to Jeffrey and Jennifer. Both Jacqueline and James independently told Jeffrey about their agreement and their desire that the PSRS accounts go

to the children. Jennifer was made aware of the agreement as well. Plaintiffs allege that this oral agreement constitutes a viable contract under Missouri law.

In January 2005, James and Jacqueline filed for divorce. Over the course of the next several months, their attorneys negotiated a settlement agreement of marital property rights, eventually entering a written settlement agreement. In the Complaint, Plaintiffs argue that the written settlement agreement did not negate the agreement that the PSRS beneficiary designations were to control and that the intent was for the surviving spouse to pass on the proceeds to the children.

The written settlement agreement, which is referenced in the Complaint and is a public record of which the Court takes judicial notice, lists James and Jacqueline's PSRS accounts as "marital property." It states that James retained "all right, title and interest" in his retirement plan "derived through his employment as a teacher including his retirement with the Public School Retirement System of Missouri." The integration clause in the written settlement agreement states that it is a "full and complete settlement of their respective rights against each other for all contractual obligations arising out of the marriage; and that [it] constitutes a full division of their marital assets and marital liabilities."

The divorce became final in October 2005. James married Deborah in 2006.

Every year after the divorce, PSRS sent James an annual one-page "Member Statement Account" that showed, among other things, the beneficiaries he had listed. In the years 2006, 2007, and 2008, under the heading of "Current Beneficiary Designations" were

listed Jacqueline L. Scott as the primary beneficiary and Jeffrey A. Scott and Jennifer L. Scott as the first and second contingent beneficiaries.

On the second page of the above statements, in the lower quadrant in small-print, is a statement reading, "Prior to retirement and upon a change in life status (marriage, divorce, birth or adoption), your beneficiary designation is void and benefits paid upon your death are made in accordance with the statutory succession of beneficiaries, unless you file a new Nomination of Beneficiary Form." (Plaintiffs dispute the evidentiary significance of such documents, stating that it was James's practice not to pay attention to such papers.)

James died on October 21, 2008.    James never took action to change the beneficiary designation on his PSRS account to remove Jacqueline.

When Jacqueline contacted PSRS concerning distribution of James's benefits, it responded that James's existing beneficiary designation had been automatically and retroactively revoked by operation of Missouri law due to divorce, and that Jacqueline was no longer entitled to the benefits.

PSRS cited Section 169.076 of the Missouri Revised Statutes, which became effective on August 27, 2005, shortly before the divorce became final, unbeknownst to Jacqueline. The statute provides in relevant part:

> The member's marriage, divorce, withdrawal of accumulated contributions, or the birth of the member's child, or the member's adoption of a child, shall result in an automatic revocation of the member's previous designation in its entirety upon the retirement system receiving actual notice of such event before or after the member's death and prior to any payments being made under the provisions of this chapter.

Mo. Rev. Stat. 169.076.2.

Deborah applied for James's retirement benefits. PSRS has been paying those benefits to her since approximately December 2008 in the amount of $2,235.53 per month. Deborah has not paid any of that amount to James's children.

Plaintiffs' Complaint alleges the following. Count I seeks damages under 42 U.S.C. § 1983, alleging that PSRS violated the Contracts Clause of the U.S. Constitution by impairing both James's contract with PSRS and Jacqueline's contract with James. Count II seeks damages for the alleged violation of the Contracts Clause of the Missouri Constitution. Count III seeks a declaratory judgment and equitable relief based on the alleged constitutional inadequacy of Section 169.076; Plaintiffs request injunctive relief in the form of payment of James's retirement benefits either to Jacqueline for the benefit of Jeffery and Jennifer or directly to those children. Count IV seeks a constructive trust, restitution, and accounting.[1]

## II.   Discussion

The PSRS Defendants move to dismiss on two bases. First, they argue under Rule 12(b)(1) that this Court lacks subject matter jurisdiction because (a) the Eleventh Amendment provides immunity to PSRS, as an arm of the state, and to the individual Defendants because Plaintiffs seek a retroactive damage award, or (b) Plaintiffs do not have standing because they have not suffered an injury in fact.

---

[1]  In their briefing, Plaintiffs clarify that they do not seek money damages against the individual Defendants in their individual capacities.

Alternatively, the PSRS Defendants argue under Rule 12(b)(6) that Plaintiffs fail to state a claim because (a) the PSRS Defendants are not "persons" subject to § 1983 liability and the individual Defendants are protected by qualified immunity, or (b) Plaintiffs cannot state a cognizable claim concerning the constitutionality of Section 169.076.[2]

## A.    Claims Based on James's Contract with PSRS

The PSRS Defendants argue that Plaintiffs do not have standing to assert claims based on James's contract with PSRS. At oral argument, Plaintiffs argued that they have third party, not third-party beneficiary, standing. Also at oral argument, counsel for Deborah confirmed that an estate remains open in state court for James, with an active personal representative.

Third party standing does not turn on the requirements of Article III of the Constitution, though those must be met, *The Wilderness Soc. v. Kane County, Utah*, 581 F.3d 1198, 1232 (10th Cir. 2009), *reh'g en banc granted*, 595 F.3d 1119 (2010); rather, third party standing looks to the contours of the prudential concept generally requiring plaintiffs to assert their own rights rather than the rights of other. *See Irving v. Clark*, 758 F.2d 1260,

---

[2] The PSRS Defendants attach the marital settlement agreement, the judgment of dissolution of marriage, and an account statement to their motion. Plaintiffs argue that considering these documents requires converting the present motion to dismiss to one for summary judgment because those documents were not incorporated into the Complaint nor do they merely reiterate what the Complaint says. Where the judgment and marital settlement agreement is a public record and the Complaint references the account statement, the Court considers them on this motion to dismiss. *See Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008) ("[A district court] may ... consider some public records, materials that do not contradict the complaint, or materials that are 'necessarily embraced by the pleadings.'") (citation omitted).

1267, n. 12 (1985) (stating that standing to raise third-party rights did not turn on the case-or-controversy requirement of Article III in a case in which heirs claimed an unconstitutional taking via operation of a statute); *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  In considering third party standing, the question is whether the third party "can reasonably be expected properly to frame the issues and present them with the necessary adversarial zeal." *Irving*, 758 F.2d at 1267.  In other words, proceeding via third party standing requires a showing of a "close relation to the third party" and a "hindrance or inability of the third party to pursue his or her own claims." *The Wilderness Soc.*, 581 F.3d at 1232 (citation omitted).

Here, Plaintiffs do not make the requisite showing for their claims asserting James's rights under his contract with PSRS.  It is far from clear that Plaintiffs' interests align with James's, as it has not been established who he intended to benefit from his PSRS account. Because there is an open estate for James with a personal representative, there is no indication that James is not able to represent his interests via his estate.  *See*, *generally*, *Warth*, 422 U.S. at 498-99;  Erwin Chemerinsky, *Constitutional Law: Principles & Polices* § 2.5, at 87 (3d ed. 2006).  Plaintiffs may not pursue claims based on James's contract with PSRS.

## B.  Claims Based on the Oral Agreement between Jacqueline and James

Plaintiffs base the remainder of their claims on the oral agreement between Jacqueline and James which they entered prior to their divorce and the written marital settlement agreement.  The Court will address the remaining issues in the case with respect to that oral agreement.

# 1.    PSRS and Eleventh Amendment Immunity

PSRS argues that all of Plaintiffs' claims against it are barred by the Eleventh Amendment. If PSRS qualifies as an "arm of the state," Eleventh Amendment immunity extends to it. *See Gilliam v. City of Omaha*, 524 F.2d 1013, 1015 (8th Cir. 1975); *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (indicating that the Eleventh Amendment extends to states in suits for any kind of relief). While PSRS is more autonomous than most public retirement systems, the vast majority of cases find public retirement systems to be arms of the state.[3]

According to the Eighth Circuit:

> Sovereign immunity extends to states and "arms" of the state, but not to local governments. Whether an entity constitutes such an "arm" turns on its relationship to the state under state law. . . . In our own "arm of the state" jurisprudence, we have looked generally to three factors: (1) an agency's powers and characteristics under state law; (2) an agency's relationship to the state – its autonomy from the state and degree of control over its own affairs; and (3) whether any award would flow from the state treasury. . . . [W]e give substantial weight to whether litigation against a particular entity would draw on the public fisc.

*Gorman v. Easley*, 257 F.3d 738, 743-44 (8th Cir. 2001) (citations omitted), *rev'd on other grounds by Barnes v. Gorman*, 536 U.S. 181 (2002).

---

[3] Of the numerous cases that have held that public retirement systems are arms of the state, five involved statewide teacher retirement systems. *See Burrell v. Teacher's Ret. Sys. of Ala.*, 2009 WL 3806133 (11th Cir. Nov. 16, 2009) (Teacher's Retirement System of Alabama); *Sculthorpe v. Va. Ret. Sys.*, 952 F. Supp. 307, 309-10 (E.D. Va. 1997) (Virginia retirement system for teachers and other state employees); *21 Properties, Inc. v. Romney*, 360 F. Supp. 1322, 1326 (N.D. Tex. 1973) (New York State Teachers' Retirement System); *Turner v. State of Ind. Teachers' Ret. Fund*, 2008 WL 2324114 (S.D. Ind. June 5, 2008) (Indiana State Teachers' Retirement Fund); *N.M. ex. rel. Nat'l Educ. Ass'n of N.M. v. Austin Capital Mgmt. Ltd.*, 2009 WL 4263336 (D. N.M. Nov. 9, 2009) (Educational Retirement Board of New Mexico).

Here, the Court must analyze (1) the powers and characteristics of PSRS under Missouri law; (2) PSRS's relationship to Missouri, including the extent of its autonomy from the State; and (3) whether any award against PSRS would flow from the Missouri State Treasury. First, a review of the statutory scheme of Mo. Rev. Stat. § 169.020 et seq. reveals PSRS's statewide nature and public purpose. PSRS is a creature of Missouri law. "Organization under state law, rather than federal [or local] law, makes it more likely that an agency is an arm of the state." *Gorman*, 257 F.3d at 743 n.4. Missouri law empowers PSRS to collect mandatory contributions from members and all public school districts in the state, invest that money as a centralized trustee, and pay out retired teachers' pensions. Mo. Rev. Stat. §§ 169.030-070.

The sole purpose of PSRS is "providing retirement allowances and other benefits for public school teachers" by implementing the Missouri statutes that create it and define its duties. Mo. Rev. Stat. § 169.020.1. Plaintiffs point to the fact that individual local school districts do not enjoy Eleventh Amendment immunity; but they admit that "the Missouri legislature has allowed numerous local school districts to, in essence, achieve economies of scale by pooling their retirement systems within PSRS." [Doc. # 60 at 13.] A central function of the state is to intervene to correct market failures by, inter alia, creating economies of scale. Through PSRS, the Missouri State Legislature intervened in local markets to create one Missouri teachers retirement system under the aegis of the State. In other words, for public policy reasons, the Missouri State Legislature decided to make a concentrated statewide concern out of diffuse local concerns. *See*, *e.g.*, *Cal. Public*

*Employees Ret. Sys. v. Moody's*, 2009 WL 3809816, at *4-*5 (N.D. Cal. Nov. 10, 2009) (finding that public retirement plans address "matter[s] of statewide concern" and perform "a central government function" by inducing persons to enter and continue in public service, facilitating the replacement of "superannuated" employees by those more capable, and providing subsistence for retired employees); *Mo. State Employees' Ret. Sys. v. Credit Suisse, N.Y. Branch*, 2010 WL 318652, at *6 (W.D. Mo. Jan. 21, 2010) (providing retirement benefits to public employees is a governmental function).

Beyond its structure and purpose, further indications of the legislature's intent to create an arm of the state in PSRS include the statutory requirement that its headquarters be located in the State capital, Jefferson City, and the express provision that the Missouri Attorney General can serve as legal counsel for PSRS at its election. Mo. Rev. Stat. § 169.020.19-20. Finally, any "retirement allowance, benefit, funds, property, or rights created by, or accruing to" PSRS are "exempt from any tax of the state of Missouri." Mo. Rev. Stat. § 169.587.

Second, the Court must analyze PSRS's relationship to Missouri, including the extent of its autonomy from the State. As mentioned above, PSRS is more autonomous than most public retirement systems – which are themselves firmly established as arms of the state under Eleventh Amendment jurisprudence. PSRS's unique relationship to Missouri is attributable to the statutory scheme's reliance on indirect, rather than direct, control of PSRS's governance and financing.

In terms of governance, three of the Board's seven members are appointed by the Governor of Missouri, subject to certain qualifications. Mo. Rev. Stat. § 169.020.2-4. All Board members are commissioned by the Governor of Missouri and serve without compensation. Mo. Rev. Stat. § 169.020.7-8. The PSRS Board must keep records of all its proceedings, and those records are open for public inspection. Mo. Rev. Stat. § 169.020.16. PSRS must present reports to the Governor of Missouri and other officials at least once every three years and make annual audits. Mo. Rev. Stat. § 169.020.22. Therefore, although the State of Missouri does not directly govern PSRS, it does exercise indirect control over PSRS's governance.

In terms of financing, the Missouri General Assembly is precluded from making appropriations to PSRS or from financing the plan or paying retirement benefits, except indirectly through funds local districts may receive in general apportionment of school moneys. Mo. Rev. Stat. § 169.110. Missouri law further provides that PSRS shall sue and be sued, transact all business, invest all funds, and hold all cash, securities, and property in its own name. Mo. Rev. Stat. § 169.020. PSRS funds "shall be deemed to be the moneys and funds of the retirement system and not revenue collected or moneys received by the state and shall not be commingled with state funds." Mo. Rev. Stat. § 169.040.1. Given the stated purpose of the PSRS organic statute – "providing retirement allowances and other benefits for public school teachers" – the objective of the provision prohibiting commingling is to protect teachers' retirement money from being diverted to other state expenditures. Mo. Rev.

Stat. § 169.020.1. In other words, the State went to great lengths to protect PSRS; it is hardly

a "discarded limb of a willing and deliberate amputee," as Plaintiffs argue. [Doc. # 60 at 12.]

Rather than provide direct support from the Missouri State Treasury, PSRS's organic

statute opted for a matching scheme, whereby "[t]he funds required for the operation of

[PSRS] shall come from contributions made in equal amounts by members of the system and

their employers . . . ." Mo. Rev. Stat. § 169.030.1. Missouri law imposes this mandatory

matching scheme on all public school districts:

> [E]ach and every employer of one or more persons who are members of the
> system shall transmit to the board of trustees . . . twice the amount that is
> deductible from the pay of such employee or employees during the school
> year. Failure or refusal to transmit such amount as required shall render the
> person or persons responsible therefor individually liable for twice the amount
> so withheld. . . . In addition to such civil penalty, and not in lieu thereof, any
> person or persons made responsible for the payment of contributions who shall
> willfully and knowingly fail or refuse to transmit such contributions or any
> part thereof to the board of trustees shall be deemed guilty of a misdemeanor
> and upon conviction thereof shall be punished by a fine of not less than
> twenty-five dollars and not more than two hundred dollars, and each day such
> person or persons shall so fail or refuse to transmit such contributions shall be
> deemed a separate offense.

Mo. Rev. Stat. § 169.030.2. State law requires all public school districts to pay into PSRS.

The Missouri statute also sets limits regulating the rates at which members may contribute

funds. Mo. Rev. Stat. § 169.030.4. Therefore, Missouri indirectly controls the financing,

as well as the governance, of this public retirement system.

Third, the Court must analyze whether any award against PSRS would flow from the

Missouri State Treasury. The "proper inquiry is not whether the state treasury would be

liable in *this* case, but whether, hypothetically speaking, the state treasury would be subject

to 'potential legal liability' *if* the retirement system did not have the money to cover the judgment." *Ernst v. Rising*, 427 F.3d 351, 362 (6th Cir. 2005) (emphasis in original) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997) (finding Eleventh Amendment immunity despite fact that university would be indemnified by federal government for costs of litigation, including adverse judgments)). The Supreme Court has explained that the inquiry's "proper focus" is whether, "[i]f the expenditures of the enterprise exceed receipts," the state treasury would be "obligated to bear and pay the resulting indebtedness" of that entity. "When the answer is 'No' – both legally and practically – then the Eleventh Amendment's core concern is not implicated." *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 51 (1994) (finding no Eleventh Amendment immunity for bi-state entity funded primarily by private investors).

Here, given the current strain on state finances and the demographic shifts on the horizon, it is important to contemplate whether the Missouri State Treasury would be hypothetically obligated to pay the debts of PSRS. As a practical matter, though the political winds are difficult to predict, the nation has recently witnessed the phenomenon of "too big to fail." As a legal matter, Missouri law currently prohibits direct payments from the State Treasury to PSRS. Mo. Rev. Stat. § 169.110. However, the State Treasury does contribute to PSRS indirectly through the funds it pays out to the same school districts it forces to pay into PSRS. *Id.* It is axiomatic that money is fungible. Thus, any award against PSRS would flow from Missouri not only by way of the school districts the State indirectly taxes to

finance PSRS, but also by indirectly reaching the moneys that Missouri itself pays to those school districts.

Considering both the de jure segregation of PSRS's funds from the Missouri State Treasury and the indirect connections between PSRS's debts and the State Treasury, the third – and weightiest – *Gorman* factor, at best, points only slightly against Eleventh Amendment immunity. "When the indicators of immunity point in different directions, the Eleventh Amendment's twin reasons for being remain our prime guide": "the States' dignity and their financial solvency." *Hess*, 513 U.S. at 47, 31. The question of whether an entity is an arm of the state is not merely "a formalistic question of ultimate financial liability." *Regents of the Univ. of Cal.*, 519 U.S. at 431. In light of (1) the Missouri Legislature's clear intent to bring under the aegis of the State the governmental function of "providing retirement allowances and other benefits for public school teachers," and (2) the indirect control Missouri exercises over the governance and financing of PSRS, the Court finds that denying PSRS Eleventh Amendment immunity would be an affront to the dignity of the State of Missouri. Mo. Rev. Stat. § 169.020.1; *cf. Hess*, 513 U.S. at 41 ("Suit in federal court is not an affront to the dignity of a [bi-state] Compact Clause entity, for the federal court, in relation to such an enterprise, is hardly the instrument of a distant, disconnected sovereign; rather, the federal court is ordained by one of the entity's founders.").

Finally, Plaintiffs' reliance on *Lynch v. Public School Retirement System of Missouri, Bd. of Trustees*, 27 F.3d 336, 338-39 (8th Cir. 1994), is misplaced. In that case, also against PSRS and its officials, the Eighth Circuit indicated that plaintiffs may seek certain equitable

relief for constitutional violations under § 1983 regardless of the Eleventh Amendment. *Lynch*, 27 F.3d at 338-39. *Lynch*, however, was an Equal Protection Clause case in which the plaintiffs sought the same right to "a cash reimbursement of their contributions" as other members had been granted under amendments to the Missouri statutes. *Id.* at 338. Before remanding the case to the district court, the Eighth Circuit noted that the plaintiffs "not only sought refunds but alternatively requested any other relief that might be appropriate," and that the district court "could require PSRS to recover the refunds already made pursuant to an unconstitutional scheme." *Id.* The case ultimately settled.

Here, Plaintiffs' substantive claim is based on the Contracts Clause. Therefore, the Court is not presented with an opportunity to correct an alleged Equal Protection Clause violation by compelling PSRS to take back money as opposed to pay out money. It is the paying out of funds that most clearly implicates the Eleventh Amendment. Plaintiffs in this case request a paying out of funds from PSRS.

*Lynch* declined to "determine the outer limits of the district court's authority to order particular remedies, such as refunds to the plaintiffs." *Id.* at 339. Although *Lynch* never mentioned *Ex Parte Young* – just as it never fully engaged in an Eleventh Amendment analysis – the Court reads *Lynch*'s dicta regarding prospective relief as falling squarely within the context of the *Ex Parte Young* doctrine. The relevant section of *Lynch* cited only two cases, both of which involved suits solely against state officials. *Id.* at 338-39 (citing *Green v. Mansour*, 474 U.S. 64 (1985) (suit against director of Michigan Department of Social Services, "refus[ing] to extent the reasoning of *Young*," at 426); *Sommer v. Bihr*, 631

16

F. Supp. 1388 (W.D. Mo. 1986) (Equal Protection Clause suit by Missouri teachers against various state officials and involving state Teacher's Retirement System)). As discussed below, the Court agrees with the *Lynch* dicta that the Eleventh Amendment does not bar prospective relief, which would indirectly compel PSRS to remedy an alleged "ongoing violation of federal law." *Id.*

### 2. Individual Defendants' Immunity

The individual Defendants argue that they are immune from suit: (a) in their official capacities under PSRS's Eleventh Amendment immunity, and (b) in their personal capacities under qualified immunity. Plaintiffs confirm that they do not seek damages against the individual Defendants in their individual capacities; the PSRS Defendant do not address that confirmation.

Even though PSRS is an arm of the state entitled to Eleventh Amendment immunity, the doctrine of *Ex Parte Young* provides an exception to that immunity on claims for declaratory and prospective injunctive relief against state officials in their official capacities. *See Dakota, Minn. & Eastern R.R. Corp. v. South Dakota*, 362 F.3d 512, 516-17 (8th Cir. 2004); *Fond du Lac Band of Chippewa Indians v. Carlson*, 68 F.3d 253, 255 (8th Cir. 1995) (stating that *Ex Parte Young* allows suits in federal court against state officials in their official capacities for prospective injunctive relief to prevent future violations of federal law). Although the Eleventh Amendment applies, Plaintiffs may proceed against the individual Defendants in their official capacities only for declaratory and prospective injunctive relief.

As to their personal capacities, "Qualified immunity insulates a defendant from all claims for legal damages, but it does not shield a defendant from claims for equitable relief." *See Hopkins v. Saunders*, 199 F.3d 968, 977 (8th Cir. 1999). Qualified immunity shields officials sued in their personal capacities if their conduct did not violate clearly-established constitutional rights of which a reasonable official would have known, *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000); here, where law on the merits of Plaintiffs' claims is arguably unsettled, any claims for damages would require § 1983 analysis. However, Plaintiffs confirm that they do not seek damages from the individual Defendants; to that extent, qualified immunity does not apply.

### 3.    The PSRS Defendants as "Persons" under § 1983

The PSRS Defendants argue that they do not fall within § 1983's definition of those subject to liability. Section 1983 provides relief against any "person" who, under color of state law, deprives another of rights provided by the Constitution. 42 U.S.C. § 1983. Based on the Eleventh Amendment, arms of the state are not considered "persons" under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989).

Even though Eleventh Amendment immunity applies, however, the doctrine of *Ex Parte Young* brings state officials sued in their official capacities within the ambit of § 1983 for purposes of prospective injunctive relief. *See Citizens for Equal Protection v. Bruning*, 455 F.3d 859, 864 (8th cir. 2006); *Murphy v. State of Ark.*, 127 F.3d 750, 755 (8th Cir. 1997) (stating that officials sued in their official capacities are not "persons" within § 1983 where they are sued for damages); *Koslow v. Commonwealth of Penn.*, 302 F.3d 161, 179 (3d Cir.

2002) ("The principle which emerges from *Young* and its progeny is that a state official sued in his official capacity for prospective injunctive relief is a person within section 1983, and the Eleventh Amendment does not bar such a suit." (citation omitted)). In their official capacities, even though the Eleventh Amendment applies, the individual Defendants are "persons" within § 1983 for purposes of Plaintiffs' claims for prospective injunctive relief.

Officials sued in their personal capacities are of course "persons" for purposes of § 1983. Thus, the individual Defendants are also "persons" under § 1983 as sued in their personal capacities.

### 4. Standing

The PSRS Defendants seem to argue that Plaintiffs do not have standing to bring a Contracts Clause claim on the oral agreement between Deborah and James because PSRS was not a party to that agreement. The Court disagrees.

Jacqueline alleges that she is a party to the oral agreement, and that application of Section 169.076 interfered with her rights under that agreement. She meets the requirements of both Constitutional and prudential standing. She alleges an injury in fact fairly traceable to the PSRS Defendants' conduct which would be redressed by a ruling in her favor. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). And she is asserting her own rights. At least one Eighth Circuit case indicates that plaintiffs like Jacqueline have standing to state a claim under the Contracts Clause based on interference with a contract by divorce-revocation statutes. *See Whirlpool Corp. v. Ritter*, 929 F.2d 1318 (8th Cir. 1991)

(considering fully an interpleader action concerning an ex-wife's Contracts Clause challenge to a divorce revocation statute).

As to the children, they are third-party beneficiaries of the oral agreement. *See L.A.C. ex rel. D.C. v. Ward Pkwy. Shopping Ctr. Co., L.P.,* 75 S.W.3d 247, 260 (Mo. 2002) (en banc) (stating that a person is a third-party donee beneficiary "if the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed nor asserted to be due from the promisee to the beneficiary") (citation omitted). With rights under that contract, the children also meet standing requirements. *See Duke Energy Trading & Mktg., L.L.C. v. Davis*, 267 F.3d 1042, 1050-51 (9th Cir. 2001) (indicating third-party beneficiaries had standing to sue under a Contracts Clause theory). Plaintiffs have standing to bring their claims.

## 5.    Pleading a Contracts Clause Claim

The question then becomes whether the oral agreement can provide a basis for Plaintiffs' challenge to Section 169.076.  Article I, § 10, cl. 1 of the United States Constitution provides: "No State shall ... pass any Law impairing the Obligation of Contracts . . . ."  Similarly, Article 1, Section 13 of the Missouri Constitution states: "No . . . law impairing the obligation of contracts . . . can be enacted."[4]

---

[4]  Though neither party addresses the issue, it appears that claims under the Missouri Contracts Clause are analyzed under the same considerations as are claims under the Contracts Clause in the Constitution of the United States.  *See generally XO Missouri, Inc. v. City of Maryland Heights*, 256 F. Supp. 2d 966 (E.D. Mo. 2002) (performing a parallel analysis without discussing any differences in the reach of the two clauses).

In considering Contracts Clause claims, courts look first to whether a state law has operated to substantially impair a contractual relationship. *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411 (1983). To allege a Contracts Clause claim, Plaintiffs must plead: (1) a contractual relationship; and (2) a change in the law substantially impairing that contractual relationship. *See General Motors Corp. v. Romein*, 503. U.S. 181, 186 (1992). If both components are satisfied, courts then consider whether the impairment is nevertheless justified as reasonable and necessary in serving an important public interest. *United States Trust Co. of New York v. New Jersey*, 431 U.S. 25 (1977).

### a.     Enforceable Contract

The PSRS Defendants argue that the oral agreement between James and Jacqueline is unenforceable.

### (1)     Parol Evidence Rule

The PSRS Defendants argue that the alleged oral agreement is unenforceable under the parol evidence rule. They argue that the written marital settlement contradicts and invalidates the prior oral agreement.

Plaintiffs argue otherwise. They contend that the mention of James's PSRS retirement account in the marital settlement agreement was a mistake. Plaintiffs further argue that the marital settlement agreement cannot be read to foreclose the oral agreement because PSRS retirement accounts are not marital property that can be divided in a marital dissolution action. *Silcox v. Silcox*, 6 S.W.3d 899, 902 (Mo. 1999) (en banc) (citing Mo. Rev. Stat. §

169.572.2, providing that PSRS accounts must be treated in the same manner as Social Security benefits).

In *National Automobile Dealers & Associates Retirement Trust v. Arbeitman*, interpreting language similar to the marital settlement agreement here, the United States Court of Appeals for the Eighth Circuit indicated that whether a written marital settlement agreement forfeits a former spouse's interest in retirement benefits is a question of fact. 89 F.3d 496, 500 (8th Cir. 1996) (considering the language of a marital settlement agreement in conjunction with facts surrounding a divorce in affirming a trial finding that the agreement did not divest an ex-spouse of pension plan benefits). Such questions of fact are not properly resolved on a motion to dismiss.

### (2) Statute of Frauds

At oral argument, the Court raised the question of whether the oral agreement would be unenforceable under Missouri's statute of frauds. The parties have not cited authority indicating that the Missouri statutes requiring written agreements apply to the facts as pleaded by Plaintiffs. *See* Mo. Rev. Stat. §§ 432.010, 474.120, 474.220, 451.220 and 452.325.

As a general matter, oral contracts in Missouri may be enforceable where "(1) the contract is definite; (2) it is proved as pleaded; (3) it is established by recent definite conversations; (4) it is fair; (5) the proof leaves no reasonable doubt that the contract was made and full performance, as far as possible, has been had; (6) the performance is referable solely to the contract; (7) the contract is based upon adequate consideration; and (8) a real

contract rather than a mere disposition to agree, is shown." *Asbury v. Crawford Elec. Coop., Inc.*, 51 S.W.3d 152, 156-57 (Mo. App. Ct. 2001). Oral agreements may be enforceable despite the statute of frauds where there is proof of acts evidencing the existence of the agreement, clear and convincing evidence of the terms of the agreement, and reliance, as well as a need to prevent a "gross-injustice or deep-seated wrong" to one of the contracting parties. *Piazza v. Combs*, 226 S.W.3d 211, 222-23 (Mo. App. Ct. 2007).

Agreements fall outside the statute of frauds' one-year requirement, even if they are not certain to be performed within one year, where they could theoretically be performed within that time. *Crabb v. Mid-American Dairyment, Inc.*, 735 S.W.2d 714, 716 (Mo. 1987) (en banc). Here, performance could have taken place within a year because James could have died within that time. *Id.* ("an oral contract to work for a person for two years would violate the statute, but a parol undertaking to hire a man 30 years old for the rest of his life would not.") (citation omitted).

Thus, on this motion to dismiss, the Court cannot say that the oral agreement here is unenforceable for failure to comply with a statutory requirement of a writing. As pleaded, Plaintiffs may state a Contracts Clause claim based on the oral agreement.

### b. Substantial Unjustified Impairment

The Eighth Circuit has indicated that statutes like Section 169.076 violate the Contracts Clause when they are applied to contracts designating beneficiaries which pre-dated the statutes. *See Whirlpool Corp. v. Ritter*, 929 F.2d 1318 (8th Cir. 1991) (considering an interpleader action and finding that retrospective application of an Oklahoma statute

revoking life insurance beneficiary designations upon divorce – enacted before the subject divorce – to pre-divorce beneficiary designations (a contract with the insurance company) violated the Contracts Clause); *see also MONY Life Ins. Co. v. Ericson*, 533 F. Supp. 2d 921, 927-28 (D. Minn. 2008) (same as to a Minnesota statute).  The *Whirlpool* court reasoned that a party designating a beneficiary was entitled to expect that his or her wishes – as expressed in a contract which pre-dated the divorce-revocation statute – would be honored.  *Whirlpool*, 929 F.2d at 1322.  By disrupting that expectation, the statute substantially impaired the contract.  *Id.*

The *Whirlpool* court rejected the argument that the revocation statute was justified by an interest in assuring that the intent of divorced individuals be given effect.  *Id.* at 1323.  A divorced individual may wish to provide for his former family at least as much as he or she wishes to provide for current heirs.  *See id.*  As such, the Eighth Circuit held that the revocation statute could not be applied to the pre-existing contract.  *See id.*

The PSRS Defendants attempt to distinguish *Whirlpool* on the basis that it concerned a life insurance policy, as opposed to a contract concerning post-death retirement proceeds.  But, like a life insurance policy, the alleged oral agreement was intended to provide for James's children after his death; the PSRS Defendants have pointed to no difference between that oral agreement and a life insurance policy which would impact a Contracts Clause analysis.  While other courts have disagreed with *Whirlpool*, in the absence of contrary direction from the Eighth Circuit, the Court is bound to follow *Whirlpool*'s guidance.

Plaintiffs have alleged an enforceable contract with which Section 169.076 substantially and unjustifiably interfered.

## III.   Conclusion

Accordingly, it is hereby ORDERED that the motion to dismiss [Doc. # 47] is GRANTED in part and DENIED in part.  The motion is granted as to Plaintiffs' claims based on James's contract with PSRS and all claims against PSRS.  As to claims based on James' oral agreement with Jacqueline, the motion is denied on Plaintiffs' claims against the individual Defendants in their personal capacities.


                                    s/ NANETTE K. LAUGHREY
                                    NANETTE K. LAUGHREY
                                    United States District Judge

Dated: September 21, 2010
Jefferson City, Missouri